UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEBORAH L. BADGLEY,

                        Plaintiff,

         -vs-                                                     07-CV-399C

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                        Defendant.

---

      Plaintiff Deborah Badgley initiated this action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security (the "Commissioner") denying plaintiff's application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Item 8). Plaintiff has declined to file a cross motion, and has filed no response to the Commissioner's motion after being granted two adjournments for that purpose. For the following reasons, the Commissioner's motion is denied and the case is remanded.

## BACKGROUND

      Plaintiff was born on June 8, 1961 (Tr. 55 ).[1] She applied for DIB and SSI benefits on December 20, 2001, alleging disability as of August 31, 2001 due to depression, anemia, hypothyroidism, and trouble sleeping (Tr. 55-57, 276-78). Plaintiff's application was denied initially (Tr. 29-34; 281-83). Plaintiff then requested a hearing, which was held

---

[1] References preceded by "Tr." are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint (Item 3).

on July 8, 2003 before Administrative Law Judge ("ALJ") Nancy Battaglia (Tr. 694-718). Plaintiff testified at the hearing and was represented by counsel.

By decision dated December 18, 2003, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 290-300). On April 23, 2004, the Appeals Council remanded the case for further proceedings (Tr. 286-89). A supplemental hearing was held on August 10, 2005 before ALJ Robert T. Harvey (Tr. 653-93). In a decision dated October 3, 2005, the ALJ found that plaintiff was not disabled (Tr. 17-27). The ALJ's decision became the Commissioner's final determination on April 27, 2007, when the Appeals Council denied plaintiff's request for review (Tr. 8-11).

Plaintiff then filed this action on June 22, 2007, pursuant to the judicial review provision of 42 U.S.C. § 405(g). On January 10, 2008, the Commissioner filed a motion for judgment on the pleadings on the ground that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 8). The court directed plaintiff to file a response by February 12, 2008 (Item 7), but none was filed.

On March 17, 2008, plaintiff wrote to the court and requested a 60-day extension of time in which to file her response (Item 11). By text order dated March 17, 2008, the court granted this request and directed her to file such response by May 19, 2008 (Item 12). Plaintiff again failed to file a response. The court then gave plaintiff one further extension of time in which to file a response. By order dated July 14, 2008, plaintiff was given until August 18, 2008, in which to file her response. No response was filed.

**DISCUSSION**

**I. Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II. Standard for Determining Eligibility for Disability Benefits

To be eligible for DIB and/or SSI under the Social Security Act, plaintiff must show that he or she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings"). If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing other work which exists in the national economy, considering the

claimant's age, education, past work experience, and residual functional capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner ordinarily meets his burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpart P, App. 2 (the "Grids").[2] However, where the Grids fail to describe the full extent of a claimants' physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability (Tr. 21-22). Upon review of plaintiff's medical records and hearing testimony, the ALJ found plaintiff's impairments-- history of drug and alcohol abuse, depression, obesity, left upper extremity weakness, and anxiety disorder--to be severe, but not of sufficient severity to meet or equal any of the impairments in the Listings (Tr. 22). The ALJ also determined that plaintiff's hypothyroidism was not a severe impairment because it did not significantly limit her ability to do basis work activities. *Id.;* 20 C.F.R. § 404.1521. The ALJ then determined that

---

[2]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in substantial gainful work existing in the nation economy. *See Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

plaintiff could not perform any of her past relevant work as a hospital housekeeper, home health aide, stain wiper, and nurse's aide (T. 23-24).

In this case, the ALJ was obligated to consider whether the plaintiff's drug and alcohol abuse was a material cause of plaintiff's impairments. *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). The ALJ reviewed the evidence, rejected plaintiff's testimony that she was not currently using alcohol or marijuana, and determined that plaintiff's drug/alcohol abuse was a material cause of her impairments (Tr. 23-24). At step four of the evaluation process, the ALJ determined that, absent consideration of plaintiff's substance abuse, plaintiff retained the residual functional capacity to lift/carry ten pounds, stand and/or walk two hours, and sit about six hours in an eight-hour workday. The ALJ found that plaintiff had occasional limitations in her ability to push-pull with her left upper extremity, and occasional limitations in her ability to maintain attention and concentration for extended periods of time. The ALJ also determined that plaintiff could not work in areas with unprotected heights or near dangerous/moving machinery, and should not climb ropes, ladders, or scaffolds (Tr. 24-25).

Proceeding to the fifth step of the sequential analysis, the ALJ relied upon Medical-Vocational Rule 201.28 as a framework for decision-making and, considering the testimony of a vocational expert ("VE"), found that the plaintiff could perform a limited range of sedentary work and thus was capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 25). Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of the decision (Tr. 25).

## III. The Commissioner's Decision is Not Supported by Substantial Evidence

Having reviewed the medical evidence and the hearing testimony, the court finds that the decision of the ALJ is not supported by substantial evidence. Plaintiff has a history of treatment for various physical problems, including fibromyalgia, edema, sleep apnea, and anemia. She also has been treated for depression, anxiety disorder, and drug/alcohol abuse. Plaintiff was examined by a consultative physician, Thomas Daly, M.D., on August 19, 2003. She was in no acute stress and, but for some weakness in her left arm, the examination was normal (Tr. 393-396). Dr. Daly assessed plaintiff's ability to do work related activities and found that she could lift and carry 10 pounds, sit, stand, and walk without limitation, but found limitations for pushing and pulling with the left upper extremity (Tr. 397-98). Plaintiff was also examined by Robert Hill, Ph.D. on August 19, 2003. Dr. Hill found that plaintiff suffered from depressive disorder, anxiety disorder and alcohol abuse in partial remission (Tr. 409), but found that "her symptoms do not appear to be so intense as to severely limit vocational capabilities" (Tr. 408). Her cognitive functioning was average, memory skills were intact, affect was slightly anxious but pleasant, and her attention and concentration were intact (Tr. 407-08).

Plaintiff was seen at the WCA Hospital Outpatient Mental Health Program in 2004 and 2005 (Tr. 438-53) and was admitted to the Outpatient Chemical Dependency Program in December 2004 (Tr. 439-41). On December 16, 2004, plaintiff admitted using marijuana three times per week (Tr. 439) and stated on December 30, 2004 that it was hard to stop using marijuana (Tr. 446). On January 26, 2005, plaintiff was prescribed the antidepressant Lexapro, after she stopped taking Zoloft. She also took Vistaril, and Flexaril for fibromyalgia (Tr. 443). Her mood was sad, but she was alert and oriented. Treatment

notes from March 1, 2005 indicate that plaintiff was stable, and her mental status was unremarkable with no suicidal or homicidal ideations (Tr. 438). She thought the medications were helping a bit and she had more energy. *Id.* On June 29, 2005, Dr. Sadiq Al-Samarrai reported that plaintiff was alert and oriented, with no risk to herself. Plaintiff reported that she was feeling anxious and depressed, and her dosage of Vistaril was increased (Tr. 560). At the supplemental hearing on August 10, 2005, plaintiff testified that she was not currently using alcohol or marijuana (Tr. 670). She also stated that she cleans, cooks, washes dishes, does laundry, vacuums, watches television, reads, and goes to church (Tr. 677-78).

In his decision, the ALJ rejected plaintiff's testimony that she was not currently using alcohol or marijuana. He noted her "fatty liver" from alcohol abuse in medical records from 2001, the 2003 report of Dr. Hill in which he stated that plaintiff's alcohol abuse was in "partial remission," and the treatment notes from WCA Hospital that indicated marijuana and alcohol use in late 2004 (Tr. 23). Additionally, treatment notes from 2005 indicated a diagnosis of alcohol and cannabis abuse. *Id.* The ALJ also stated that plaintiff denied or minimized her use of alcohol and marijuana to her providers. Finally, the ALJ stated that plaintiff had never been in an inpatient treatment program, and that there was "no evidence of negative urine or blood tests." *Id.*

The Regulations require the ALJ to determine whether a claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535, 416.935. In making this determination, the "key factor" to be examined is whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b). Furthermore, when the record

shows substance abuse, it is the claimant's burden prove that substance abuse is not a contributing factor material to the disability determination. *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 273 (W.D.N.Y. 2005); *Eltayyeb v. Barnhart*, 2003 WL 22888801, *4 (S.D.N.Y. December 8, 2003) (citing *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001)). Here, the ALJ found that plaintiff could work at a sedentary level, but that she had "additional limitations . . . clearly secondary to [her] ongoing drug and alcohol abuse . . . [which] would greatly restrict her occupational base" (Tr. 24). These limitations included "the ability to perform certain activities within a schedule, maintain regular attendance, be punctual within customary tolerance, maintain attention and concentration for extended periods of time, accept instruction and respond appropriately to criticism from supervisors, get along with co-workers or peers, and complete a normal workday or workweek . . ." (Tr. 24). The ALJ rejected plaintiff's testimony that she was not currently abusing alcohol and/or marijuana, and found that her substance abuse was a contributing factor material to plaintiff's disability. This determination is not supported by substantial evidence.

The reasons cited by the ALJ for rejecting plaintiff's hearing testimony and concluding that she was abusing marijuana and alcohol do not support that conclusion, or the conclusion that such substance abuse was a contributing factor to her disability. An indication of a "fatty liver" in medical records from 2001 does not indicate the continued abuse of alcohol in 2005. Likewise, indications in 2004 treatment notes of alcohol and marijuana use do not indicate continued use at the time of the hearing, particularly in light of plaintiff's outpatient treatment for chemical dependency. Additionally, a diagnosis of alcohol or substance abuse, accordingly to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision ("DSM IV-TR"), does not necessarily indicate

current ongoing use, but only a "maladaptive pattern" of recurrent use within a twelve-month period. American Psychiatric Ass'n, DSM IV-TR, 199 (2000). The ALJ also erred when he stated that plaintiff had never been a patient in an inpatient treatment program. In her assessment summary for the WCA Hospital Outpatient Chemical dependency Program, plaintiff reported that she had been in an inpatient program three times, the last being in October 2002 (Tr. 439).

The ALJ stated that plaintiff did not offer evidence of negative blood or urine tests to substantiate her claim that she was no longer abusing marijuana or alcohol at the time of the hearing in 2005. While this additional evidence could have been presented to sustain her burden of proving that drug or alcohol abuse was not a contributing factor material to the disability determination, the remaining evidence does not support the ALJ's conclusion that plaintiff was abusing those substances at the time of the hearing. Additionally, the ALJ failed to cite record evidence to support the conclusion that plaintiff's marijuana and/or alcohol abuse was a contributing factor material to her mental impairments. *See White v. Commissioner,* 302 F.Supp.2d 170, 174 (W.D.NY. 2004) (decision reversed where ALJ cited no record evidence to support conclusion regarding the effects of alcoholism on plaintiff's mental impairments); *see also Eltayyeb v. Barnhart*, 2003 WL 22888801 (S.D.N.Y. December 8, 2003) (plaintiff's alcohol and marijuana dependence considered a contributing factor material to his disability where there was medical evidence from multiple sources that it exacerbated plaintiff's depression, paranoia, and social isolation); *Tablas v. Apfel*, 2000 WL 423914 (S.D.N.Y. March 21, 2000) (plaintiff's drug and alcohol dependence were contributing factors material to disability where medical evidence showed that plaintiff relapsed several times into alcohol and drug

dependence and that his impairments improved during periods of sobriety to the point he could work).  Upon remand, the ALJ should determine whether plaintiff had stopped abusing marijuana and/or alcohol during the relevant time period, and make a thorough determination, including citation to record evidence, regarding the effects of drug/alcohol abuse on those disabling limitations.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings (Item 8) is denied.  The case is remanded for further proceedings consistent with this decision pursuant to the fourth sentence of 42 U.S.C. § 405(g).

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: March    23   , 2009
p:\opinions\07-399.dec1608